LEWIS T. JANES, administrator &c., et al., appellants,

*v.*

ISAAC N. FALK, receiver &c., respondent.

1. If the owner and possessor of property, intending to make disposition
thereof for the benefit of another, unequivocally declares himself a trustee
thereof for the other person, the latter thereby becomes vested with the equita-
ble estate, even though he is not informed of the declaration and the trustee
does not part with the possession of the property or deliver the writing (if
there be a writing) which declares the trust.

2. The owner of a policy of life insurance, being also executor of an estate
and indebted to it for securities which he had converted to his own use, placed
the policy among the papers of the estate and with it a letter stating that the
policy was collateral for the payment of his indebtedness. Afterwards he in-
formed those interested in the estate that he had disposed of some of its
securities but had secured the estate by substituting this policy and that he-

Janes v. Falk.

held it for the benefit of the estate    Subsequently he testified that, after placing the policy among the estate's papers, he did not regard it as his individual property, but held it in trust for the estate.—*Held*, that a declaration of trust in favor of the estate was proven, and that in equity the policy belonged to the estate.

On appeal from a decree advised by Vice-Chancellor Green, whose opinion is reported in *4 Dick. Ch. Rep. 484.*

*Mr. Augustus W. Cutler*, for the appellant Janes.

*Mr. Theodore Little*, for the respondent.

The opinion of the court was delivered by

Dixon, J.

In supplementary proceedings to collect a judgment obtained by James M. Frost against Daniel D. Craig in the New York city court the complainant, Isaac N. Falk, was, on December 2d, 1889, appointed by that court receiver of all the property, real and personal, of said Craig.   The New York Code of Civil Procedure enacts :

"Section 2468. The property of the judgment debtor is vested in a receiver * * * from the time of filing the order appointing.him * * * Section 2469. Where the receiver's title to personal property has become vested * * * it also extends back by relation for the benefit of the judgment creditor * * * so as to include the personal property of the judgment debtor at the time of the service of the order or warrant"

to bring him before the judge for examination.    Such a warrant was served on Craig November 9th, 1889.

On May 13th, 1890, the complainant filed his bill in the court of chancery against Daniel D. Craig, the Mutual Life Insurance Company of New York, Lewis T. Janes, administrator *cum testamento annexo* and trustee under the will of Henry Baird, deceased, and others, setting forth that on November 9th, 1889, the said Craig was entitled to a certain endowment policy of life insurance issued to him upon his life by said insurance company

for the sum of $2,500; that the said policy was claimed and held by said Janes to secure an indebtedness from said Craig to the Baird estate, and praying a decree to establish the title of the complainant in the policy and direct its delivery to him, or else to order that the policy be sold and out of the proceeds the complainant be first paid the amount of the said judgment against Craig. Pending the suit Craig died and the insurance company brought the amount due on the policy into court, submitting its disposal to the chancellor's decree upon the contending claims of the complainant and the defendant Janes. After answer by Janes, asserting his prior title, a decree was made sustaining the right of the complainant, and from this decree the administrator appeals.

The complainant, having come into a court of equity for redress, must, of course, recognize the equitable rights of the defendant. *1 Pom. Eq. Jur.* § *385*. His own claims, whether legal or equitable, did not accrue before November 9th, 1889, and if prior to that time the defendant obtained an equitable interest in the policy it must be deemed paramount to the complainant's title. In this court the equitable estate is considered to all intents and purposes as a legal estate (*Cushing* v. *Blake, 3 Stew. Eq. 689)*, and *"prior in tempore potior est in jure"* when other reasons for equitable preference are not found. *Brown* v. *Hendrickson, 10 Vr. 239.*

With regard to the claim of the appellant Janes, as administrator and trustee of the estate of Henry Baird, the case presents the following features: That Daniel D. Craig was the executor and trustee of that estate from January 20th, 1888, until November 8th, 1889, when he was removed; that as early as February, 1889, he had converted to his own use assets of the estate to the amount of about $2,000; that then he placed the said policy of insurance among the papers of the estate in a tin box, and with it put a letter saying that the policy was collateral for the payment of his indebtness to the estate of Henry Baird; that thereafter (according to his testimony) he did not regard the policy as his individual property, but held it in trust for the Baird estate; that on several occasions between February and Novem-

Janes *v.* Falk.

ber, 1889, he informed those interested in the Baird estate, through their representatives and counsel, that he had disposed of some of the securities belonging to the estate, but had secured the estate by substituting this insurance policy, and that he held the policy for the benefit of the estate; that after the removal of Craig as executor on November 8th and the appointment of Janes as administrator on November 14th, 1889, the policy, with a formal assignment from the former to the latter, was duly delivered to the administrator.

These facts form a perfect declaration of trust in favor of the beneficiaries of the Baird estate, making them the equitable owners of the policy for the purpose of reimbursement, and constituting Craig, at the time when his rights are said to have passed to the complainant, a mere trustee for those beneficiaries.

The principle upon which this conclusion rests is thoroughly settled in equity. As applied to mere gifts, it is thus stated by Professor Pomeroy (*2 Pom. Eq. Jur.* § *997*):

"A person holding property, real or personal, and intending to make a voluntary disposition thereof for the benefit of another, may do so in any one of three modes: (1) He may make a simple conveyance or assignment of it directly to the donee, so as to vest in the latter whatever interest and title the donor has, without the intervention of any trust. (2) He may make a transfer of it to a third person upon trusts declared in favor of the donee. (3) He may retain the title, and declare himself a trustee for the donee, and thus clothe the donee with the beneficial estate. * * * If the donor adopts the second or third mode, he need not use any technical words, or language in express terms creating or declaring a trust, but he must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare a trust in himself. It is not essential, however, that the donor should part with the possession in the cases where he thus creates or declares a trust. These conclusions are sustained by the decided weight of authority, and must be regarded as the settled rules of equity jurisprudence upon the subject."

The numerous cases cited in the notes to the foregoing text fully warrant the doctrines enunciated. The following more recent cases may also be referred to for illustration of the rule applicable to the case in hand: *Fox* v. *Hawks, 13 Ch. D. 822; In re Breton's Estate, 17 Ch. D. 416; In re Vernon, Ewens & Co., 32 Ch. D. 165; Gerrish* v. *New Bedford Ins. for Sav., 128*

*Mass. 159; In re Smith's Estate (Pennsylvania Company's Appeal), 144 Pa. St. 428; Connecticut River Savings Bank* v. *Albee, 25 Atl. Rep. 487.*

Many of these cases also hold that it is not essential that the memorandum relied on should have been delivered to any one as a declaration of trust, or that the *cestui que trust* should have been informed of the trust, the presence or absence of these circumstances being material only in considering whether the trust has been actually declared.

The cases cited are mostly instances of voluntary gifts, and, therefore, they demonstrate that, upon a declaration of trust, the *cestui que trust* acquires an absolute equitable estate or title, and not a mere right to ask for a title, for it is the settled doctrine of equity not to aid in perfecting a gift, and only to recognize an intention to give when it is completely executed and has resulted in the creation of a trust estate. If there be a valuable consideration between the alleged trustee and *cestui que trust*, then, under the equitable rule that what ought to be done will be considered as done, the court may deem a contract to declare a trust as equivalent to an actual declaration. But with that principle we are not now dealing—we are concerned only with the question whether a trust was really declared.

Recurring to the facts above stated, we find that there was no attempt, on the part of Craig, to transfer the policy to any other person than himself, for the reason that he was himself the legal representative of those whom he meant to benefit by his act; that he placed the policy among the papers of the Baird estate with the letter stating his purpose, thereby to indicate that he held the policy just as he held the other papers, as trustee for the Baird estate; that he informed the beneficiaries that the policy was substituted for, held instead of, by the same right as, the securities of the estate, and that he considered the policy not as his own, but as trust property. These purposes, acts and declarations are not equivocal. They distinctly manifest Craig's intention that the Baird estate should have the benefit of the policy; that this benefit should be acquired, not by his assignment of the policy, but by a change in the character of his own

possession of it, and they show this intention executed by act and declared by writing and by speech. The rights thus created were irrevocable. They might be defeated if the evidence of them should be suppressed, or if Craig should abstract the policy as he had abstracted other securities of the estate, but he could not in a lawful sense revoke the rights which he had conferred. He had made himself trustee of this policy as perfectly as he was of the other property of Henry Baird, deceased.

If this equitable estate had been created as a mere gift, the respondent, representing a creditor, might have assailed it on that ground, but as it was created for the benefit of equitable creditors whom Craig had a right to prefer, we see no reason for postponing it to the respondent's claim.

The decree in favor of the complainant should be reversed, and a decree should be entered directing that, out of the proceeds of the policy, the administrator of the Baird estate be first paid the amount of Craig's indebtedness to him, and then the complainant be paid the balance, if any.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, REED, VAN SYCKEL, BOGERT, BROWN, SMITH—9.

*For affirmance*—MAGIE—1.