The complainant filed a bill of interpleader herein to determine the ownership of a sum of money amounting to approximately $2,687.65. The money is the balance of a savings account in complainant's bank standing in the name of Fredericke Klosterman or Mary Reimers. There are two separate signature cards on file in the bank, one signed by Fredericke Klosterman, and the other by Mary Reimers; *Page 146 
each card had stamped thereon "either or the survivor to draw." Mary Reimers was the daughter of Fredericke Klosterman.
Fredericke died December 9th, 1933, leaving a last will and testament wherein she appointed the defendant George Havemeyer, executor under her will, a claimant herein. Mary died on August 30th, 1940, intestate, leaving her surviving, her daughter, Marie Reimers, who is administratrix of her mother's estate, and a claimant herein.
Mrs. Klosterman opened the bank account in her name on January 2d 1912. Her original signature card, signed by her, gave her address as 532 Newark Avenue, Jersey City, New Jersey (ExhibitD-5). Some time later the account was changed to read "In account with Fredericke Klosterman or Mary Reimers." The signature cards of Fredericke and Mary show that both parties resided at 440 Bergen Avenue, Jersey City, and had stamped thereon "either or the survivor to draw" (Exhibit D-5). When the change in the name of the account to Klosterman or Reimers was made does not appear. The testimony however indicates that Mrs. Klosterman's husband died in September, 1915, and that thereafter she went to live with her only child, her daughter Mary, at 440 Bergen Avenue, Jersey City. The administratrix says that her mother and her grandmother Fredericke lived at the latter address as early as 1921.
There were eighteen deposits made in the bank account (ExhibitD-2) from 1913 to 1924, inclusive; one was made in 1913, three in 1915, three in 1916, and eleven thereafter up to 1924. Eleven deposit slips were produced, eight in the name of Fredericke Klosterman and three in the name of Mary Reimers. On January 7th, 1926, $100 was withdrawn from the account by Mary Reimers, who signed the withdrawal slip therefor. Mrs. Klosterman withdrew $1,000 on July 2d 1931; $2,000 and $100 on October 28th, 1931; $50 on July 23d 1932; and $100 on June 1st, 1933.
A passbook for the account was issued in 1926 in the name of "Fredericka Klosterman and Mary Reimers;" stamped thereon was the following "either and the survivor to draw" (Exhibit D A-1). *Page 147 
In the latter part of 1931 Mrs. Klosterman was admitted to the Fritz Reuter Altenheim, a home for aged people, in North Bergen, New Jersey. At the time of her admission she handed the passbook aforesaid to Mrs. Helen Wehman, matron of the home. Mrs. Wehman held the passbook until after the death of Mrs. Klosterman, when she delivered it to the attorney for the executor aforesaid.
The administratrix contends that the fund was a joint tenancy and that title thereto vested in Mary Reimers as surviving joint tenant on the death of Fredericke.
The executor denies that the account was one of joint tenancy, and charges that the funds were the sole property of Mrs. Klosterman and that at her death they became a part of her estate.
The testimony gives no indication of the ownership or source of the money in the account. However, much of the moneys appears to be earned interest rather than sums deposited.
After Mrs. Klosterman entered the Fritz Reuter Altenheim in the latter part of 1931, she, on November 6th, 1931, executed a testament whereby she made the home the sole beneficiary of her estate.
Practically all the evidence in this case appears to be in the form of the account itself.
The executor contends that since the bank account does not contain the word "joint," it is not a joint account; and, consequently, the administratrix must fail in her claim.
In the instant case mother and daughter dealt with the account as though it was the sole property of each. This appears to be so, not alone from the conduct of the depositors, but from the attitude of the bank. The bank seemed to consider the account a joint account payable to either of the parties or to the survivor. Nevertheless, whether or not the account was a joint one, the contract between the bank and the depositors, in the absence of any other evidence, in my opinion, determines the title to the funds. The bank agreed to pay the balance in the account, on the death of one of the parties, to the survivor. There is no other testimony in this proceeding except the contract with the bank to guide the *Page 148 
court to a decision. The law, in the circumstance, favors the administratrix.
It is provided in R.S. 17:9-5, that:
"When a deposit has been, or shall be, made in any bank or trust company transacting business in this state in the names of two persons, payable to either, or payable to either or to the survivor, the balance or any part thereof to the credit of said account including interest or dividends thereon may be paid to either of said persons during the life of both and in case of the death of either of said persons the balance to the credit of said account including any dividends or interest thereon shall be paid to the survivor, and the legal representatives of the one dying shall not have any claim or right thereto notwithstanding that such balance or any part thereof may have been the property of the one dying."
See, also, R.S. 17:9-5.1.
In New Jersey Title Guarantee and Trust Co. v. Archibald,91 N.J. Eq. 82; 108 Atl. Rep. 434, it was, among other things, said:
"It will be noticed that it does not appear clearly from the bill of complaint whether the moneys deposited belong originally wholly to the mother, or in part to her and in part to the daughter. But that is immaterial.
"We think that where, as here, moneys belonging originally either wholly to the mother, or in part to her and in part to her daughter, are deposited by them in a bank in their joint names, and at the same time they both sign and deliver to the bank, a writing stating that `This account and all money to be credited to it belongs to us as joint tenants and will be the absolute property of the survivor of us; either and the survivor to draw,' upon the death of the mother, the undrawn moneys belong to the surviving daughter."
In Commercial Trust Co. v. White, 99 N.J. Eq. 119;132 Atl. Rep. 761; affirmed, 100 N.J. Eq. 561; 135 Atl. Rep. 916,
Vice-Chancellor Fielder in his opinion indicated that in the absence of any other proof the writings signed by the parties to the account determine their rights in the account. The Vice-Chancellor said, among other things:
"In opening the accounts, Bullis had either a donative intention of a then present gift to Mrs. White of an interest in the moneys deposited therein, with the right to receive *Page 149 
what remained to the credit thereof at his death in case she survived him, or an intention merely to use her as a convenience in withdrawing money for him in his lifetime, with no beneficial interest to her in the money, except, perhaps, after his death, in case she survived him. There being no direct testimony to show what his purpose was, the rights of the donor and donee must be determined upon the effect to be given the writings which they signed and delivered to the several banks, in connection with the surrounding circumstances."
I do not find in this case any evidence which would indicate that the name of Mary Reimers was added to the account for the convenience of Mrs. Klosterman. Mrs. Klosterman was able to read and write and seemed to be able and independent in her movements. The activity in the account itself indicates that Mrs. Klosterman called at the bank to make deposits and to make withdrawals. Mary Reimers withdrew moneys from the account which indicates that she exercised dominion over the account.
See Kaufman v. Edwards, 92 N.J. Eq. 554; 113 Atl. Rep. 598,
wherein Vice-Chancellor Buchanan said in part:
"In the present case I am inclined to the opinion that the intent was of a present transfer and vesting of the right in remainder (and, probably, indeed, of a right in the entire chose during Mrs. Kaufman's life), from the fact of the indiscriminate mingling in the deposits of the contributions of both parties, and the keeping of no record by either as to the amounts respectively contributed. Such conduct, it seems to me, negatives the idea of the retention of separate interests and is compatible only with the idea and intent of a joint ownership in the mingled and indistinguishable assets, especially under the circumstances of close relationship and mutual trust existing between this mother and daughter."
In this case, the court held the burden of proof to disprove the intent to make a present gift to the donee, was on the one who attacks the transfer. In the instant case the burden was on the executor of Mrs. Klosterman. He has not sustained it.
In Trenton Saving Fund Society v. Byrnes, 110 N.J. Eq. *Page 150 617; 160 Atl. Rep. 831, Vice-Chancellor Buchanan, among other things, said:
"Under the authority of the Archibald Case, supra, the evidence of the transaction mentioned — the signing of the card by both persons, and the language on the card so signed (all of which are identical with the facts in the instant case) — constitutes sufficient evidence, prima facie, of the requisite donative intent."
The relationship between Mrs. Klosterman and Mary Reimers, that of mother and daughter, may be said to have a bearing upon the act of the mother, or to have influenced her, in adding her daughter's name to the account. It is most natural for a parent to provide for, or to assist her child in a financial way. The court observed in Doughty v. Dobbin, 109 N.J. Eq. 513;158 Atl. Rep. 768:
"It is natural that a father should provide for his daughter, as the paternal feelings of a good man prompt him to do so; and when a gift is made under such circumstances, the law presumes such act in all respects, proper and just, until the contrary is made to appear. The burden is on him who alleges the contrary to prove it, and the proof must be convincing, leaving no reasonable doubt as to the intention of the donor."
Other cases in point are: Hickey v. Kahl, 129 N.J. Eq. 233;19 Atl. Rep. 2d 33; Steinmetz v. Steinmetz, 130 N.J. Eq. 176; 21 Atl. Rep. 2d 743; Lester v. Guenther, 132 N.J. Eq. 496; 28 Atl. Rep. 2d 777.
Counsel for the executor attempted to offer evidence remote from the time when the account was transferred to the donee, and counsel for the administratrix objecting thereto was sustained. I feel that whatever Mrs. Klosterman told somebody else in the absence of her daughter Mary Reimers about her (Mrs. Klosterman's) interest in the account, many years after the change therein was made, is not admissible. The case of Wolf v.Wolf, 136 N.J. Eq. 403; 42 Atl. Rep. 2d 300, cited by counsel for the executor, has no bearing upon the facts in the instant case.
Bankers' Trust Co. v. Bank of Rockville Center Trust Co.,114 N.J. Eq. 391; 168 Atl. Rep. 733, is authority for this *Page 151 
court's attitude in refusing to receive testimony remote from the transaction. In that case it was, among other things, said:
"The proofs which shall raise a resulting trust, or rebut the presumption of a gift or settlement in the case of a child or wife, must be of facts antecedent to or contemporaneous with the purchase, or else immediately afterwards, so as to be in fact part of the same transaction. A resulting trust cannot be raised from matters arising ex post facto."
The intention of the parties at the time of the conveyance or transfer controls; and in the instant case it is evidenced by the agreement with the bank.
It is my opinion that the administratrix, Marie Reimers, is entitled to the balance remaining in the account aforesaid. I shall advise a decree to this effect.