This is an interpleader suit involving a fund of approximately $2,121.37 and interest in the complainant's bank in an account entitled "Thomas J. Brehoney, Trustee for Edward Howgate." Brehoney died on May 15th, 1945, a resident of the City of Newark, New Jersey, leaving a will which was probated June 7th, 1945, in which the defendant Thomas Bolton, his nephew, was named executor. Howgate, a resident of Philadelphia, Pennsylvania, is also a nephew of the decedent, and claims the fund as the cestuique trust. *Page 2 
Bolton, as executor, claims the proceeds of the account as an asset of the decedent's estate.
The decedent Brehoney opened the account in his own name in the complainant's bank in Jersey City on or about January 24th, 1919. On or about January 1st, 1930, he caused the title to the account to be changed to "Thomas J. Brehoney — Trustee for Edward Howgate." He retained the bank book in his possession. Brehoney made five deposits in the account from the time it was changed, on January 1st, 1930, to May 24th, 1943. On June 13th, 1940, he withdrew the sum of $50, and turned it over to Howgate. No other money was withdrawn from the account.
Over a period of years the decedent visited the defendant Howgate in Philadelphia on an average of three or four times annually and remained there in the Howgate home from three to six days at a time. Howgate's wife Ruth testified that the relationship between her husband and his uncle, the decedent, was cordial, most friendly, and intimate. That on many occasions the decedent declared he had set up a trust fund for her husband in the Provident Institution for Savings in Jersey City; that, in her presence, and in the presence of others, the decedent said to her husband, "I have set up a trust fund for you in Jersey City; you can have it now or any time you want it." The first conversation to that effect, she said, took place approximately ten years ago and referred to an account in the Halcyon Building and Loan Association in Newark, New Jersey, where the decedent had an account entitled, "Thomas Brehoney, Trustee for Edward Howgate." This association, she said, went into liquidation and a dividend check for $400 was sent to the decedent in May of 1943; and after he received it, he visited them and told Howgate if he wanted the check he could either have it then, or if he did not want it at that time, he would deposit it in the trust fund in Jersey City. She stated that at no time did the decedent change his favorable attitude toward Howgate.
Jacob W. Alker, a neighbor of the Howgates in Philadelphia, testified he met the decedent Brehoney in May, 1940: and that he saw him again in June of 1940 when he visited the Howgate home, and in his presence Brehoney handed the *Page 3 
defendant Howgate the sum of $50 in cash which he said he had withdrawn from the trust fund in the Provident Institution for Savings in Jersey City; that the decedent on several occasions declared that he had set up the trust fund in the Provident Institution for Savings in Jersey City for the benefit of the defendant Howgate.
The defendant executor, Bolton, testified on cross-examination that in a conversation he had with the decedent about the moneys held in trust as aforesaid, the decedent told him "he thought it was Eddie's." I was not impressed with Bolton's testimony as to his claim. He was inclined to be evasive. His recollection of events, incidents and conversations was not satisfying or convincing. His testimony, in part, follows:
"Q. Had you ever discussed the matter with Mr. Howgate, Mr. Bolton? A. About what matter?
"Q. About the trust fund? A. No, I didn't.
"Q. Did you ever have any conversation with him? A. Not about it, no, because Mr. Howgate knew nothing about the trust fund, to my knowledge.
"Q. He never knew anything about it? A. Not to my knowledge.
"Q. Did the decedent ever talk with you about it? A. No.
"Q. Did you ask the decedent who this account belonged to? A. I probably did, yes, sir.
"Q. And what did he tell you? A. He said he wasn't quite sure. He said he thought it was Eddie's.
"Q. He said what? A. He said he thought it belonged to Eddie.
"Q. He said he thought it belonged to Eddie? A. Yes.
"Q. You mean Howgate? A. That's right."
The evidence is clear, unequivocal and uncontradicted that the decedent declared his account in the Provident Bank to be a trust fund set up by him for the benefit of his nephew, Edward Howgate. The defendant Bolton's testimony is corroborative of the decedent's declaration to that effect.
The bank book was retained by the decedent because of an expressed intention by him to make future additions to the account. The bank was conveniently located in nearby Jersey City, while the defendant Howgate's home was in Philadelphia. *Page 4 
Certainly, it cannot be said, in the circumstances, that Howgate's name was added to the account as a convenience to the decedent.
It is argued that the title to the account was changed without Howgate's knowledge and that he had not been consulted as to it by the decedent, and had not been informed of the fact until after Brehoney's death. The evidence is to the contrary. Even assuming Howgate had no knowledge of Brehoney's act in establishing the trust fund, the lack of it would not affect the validity of the decedent's aim or intention. The law is well established in that respect.
In Mucha v. Jackson, 119 N.J. Eq. 348; 182 Atl. Rep. 827,
which involved a trust account in a bank, the court said, "Where there is an unequivocal declaration of trust by the owner of property for the benefit of another, the trust becomes irrevocable even if the beneficiary is not notified of the declaration and the trustee remains in possession of the property."
In Eagles Building and Loan Association v. Fiducia, 135 N.J. Eq. 7; 37 Atl. Rep. 2d 116, the court said, "a declaration by A that he holds certain property in trust for B, or as trustee for B, is a complete and specific declaration of an inactive or passive trust. * * * The beneficiary need not be informed of the trust, and there need be no delivery of the declaration, or memorandum to anyone."
To the same effect are the principles enunciated in the case ofJanes v. Faulk, 50 N.J. Eq. 468; 26 Atl. Rep. 138; Nicklas v.Parker, 69 N.J. Eq. 743; 61 Atl. Rep. 267; affirmed, 71 N.J. Eq. 777; 71 Atl. Rep. 1135.
In Wolf v. Wolf, 136 N.J. Eq. 403; 42 Atl. Rep. 2d300, it appeared that the decedent on "several occasions" told witnesses that she had "set up," "erected," "established" and "arranged" a trust fund for the minor for his college education. The court stated "such, and similar proofs, all uncontradicted, show that the decedent by her `written' or by her `spoken' words or by her `conduct' * * * gave `outward manifestation' of her intention to create a trust. 1 Scott on Trusts (1939), § 23;Restatement, Trusts, § 23. Cf. Eagles Building and LoanAssociation v. Fiducia, 135 N.J. Eq. 7; 37 Atl. Rep. 2d116." *Page 5 
 Hickey v. Kahl, 129 N.J. Eq. 233; 19 Atl. Rep. 2d 33, in several respects resembles the situation in the instant case.
The decedent's intention as expressed by him and supported by his conduct favors the claim of Howgate. I shall advise a decree to that effect.